IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DERRICK A. MITCHELL, | | |
| | Plaintiff, | No. CIV S-10-0926 DAD P |
| vs. | | |
| NANGALAMA, et al., | | <u>ORDER AND</u> |
| | Defendants. | <u>FINDINGS & RECOMMENDATIONS</u> |
| _____/ | | |

      Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. On October 7, 2010, the court dismissed plaintiff's complaint and granted him leave to file an amended complaint containing factual allegations concerning each of the five named defendants and clarifying plaintiff's efforts to exhaust administrative remedies prior to initiating this lawsuit. On October 19, 2010, plaintiff filed a document styled, "Permission For Leave To File Plaintiffs [sic] Amendment [sic] Complaint," (Doc. No. 8) which the court construes as plaintiff's amended complaint.

I. <u>Exhaustion of Administrative Remedies</u>

    A. <u>Exhaustion Requirement</u>

      By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The United States Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. Booth v. Churner, 532 U.S. 731, 741 (2001); see also Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. Booth, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary, it has been held that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. Woodford v. Ngo, 548 U.S. 81, 90-93 (2006).

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most inmate appeals progress through three levels of review. See id. § 3084.7. The third level of review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense. See Jones v. Bock, 549 U.S.199, 216 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003). The defendants bear the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. When the district court concludes that the

prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120. See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005). On the other hand, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

     B. Plaintiff's Emergency Appeal

In his original complaint, plaintiff used the courts form complaint for a § 1983 action and answered both "yes" and "no" as to whether the prison grievance process was completed. (Compl., Doc. No. 1 at 2.) Plaintiff also stated in the form complaint that he had labeled his grievance as a "'medical emergency'" so that it could be processed "expediently;" however, prison officials "failed to timely respond to plaintiff's medical emergency" as required by the regulations. (Id.) In the court's October 7, 2010 order, plaintiff was advised regarding the exhaustion requirement and directed to clarify in his amended complaint whether his emergency medical grievance had been processed to the third or director's level of review before plaintiff filed his civil rights action in this court.

In his amended complaint, plaintiff explains that he submitted an emergency medical grievance, dated March 9, 2010, with respect to the medical issue he described as follows:

> Dr. A Nangalama-M, the other female Dr. I was treated by, and the Dr. who handled my upper G.I. examination, all have failed to adequately and effectively treat my internal illness of a ulcer, gastrosinal reflex disorder, or whatever "the exact illness is." I have have [sic] treatment for 2 years now. I was also denied further follow-up upper G.I. exam, and treatment, except for medication that has been recently (6 months ago) limited. Also I need a special bland diet and taken to (transfered [sic]) a facility medical were [sic] I can receive [sic] adequate diets and treatment. Furthermore, I requested a transfer to Vacaville, and additional medicines for internal pains, sharp, pin-like aches, need methodone [sic], vicadin [sic], or codienes [sic].

(Doc. No. 8 at 21.) Plaintiff contends that he should have received a response to his emergency grievance within four to six days. He now indicates that he was notified by prison officials fourteen days after submitting the grievance, that his grievance was rejected for emergency

3

processing.[1] Plaintiff's grievance was bypassed for informal review and at the first level of review, the appeal was partially granted on April 13, 2010. (Id. at 21-22 and 19-20.) Dr. Ali, who responded to plaintiff's inmate appeal, explained his findings as follows:

> I met with you on April 7, 2010 to address your appeal. You saw Dr. Nangalama on March 25th, and labs were drawn on April 1st. I reviewed the results with you, and you agreed to do more labs on your stool for H. Pylori antigen for peptic ulcer disease. I also discussed that methadone, Tylenol-3, and Vicodin are not indicated for peptic ulcer disease. Today your weight is 202 pounds as compared to 196 pounds on June 24, 2009. There is no indication for a bland diet, vitamins or nutritional supplements at this time. There is no need to transfer you to Vacaville. You may access policies regarding diets in the law library.

(Id. at 19.) Plaintiff did not appeal this administrative decision to the next level of review.

In his amended complaint, plaintiff contends that his inmate grievance should have been processed as an emergency appeal because his medical condition met the medical emergency standard. (Doc. No. 8 at 10.) Regulations pertaining to inmate emergency administrative appeals provide as follows:

> When circumstances are such that the regular appeal time limits would subject the inmate . . . to a substantial risk of personal injury or cause other serious and irreparable harm, the appeal shall be processed as an emergency appeal. Emergency circumstances includes, but are not limited to:
>
>   (A) Threat of death or injury due to enemies or other placement concerns.
>
>   (B) Serious and imminent threat to health or safety.

Cal. Code Regs. tit. 15, § 3084.9(a)(1) (Westlaw 2010). An inmate emergency appeal must be submitted directly to the appeals coordinator who, in turn, is to make the determination as to how

---

[1] In his amended complaint plaintiff refers to an Exhibit III as a copy of his rejection notice with respect to his emergency inmate appeal. However, it appears that plaintiff has attached the wrong notice to his amended complaint. See Doc. No. 8 at 23. The rejection notice attached by plaintiff is dated March 11, **2009**, which is almost one year **before** plaintiff submitted his emergency grievance.

4

the appeal is processed. The applicable regulation further provides:

> (3) If the appeals coordinator determines emergency processing is unwarranted, the inmate . . . shall be notified and the appeal shall be processed pursuant to subsection 3084.5(b)(2).
>
> (4) If emergency processing is warranted, the first level shall be waived and the second level review shall be completed within five working days.

Id. §3084.9(a)(3)-(4). When an inmate appeal is rejected for emergency processing, the inmate is "notified that the appeal does not meet the criteria for processing as an emergency appeal and has been either accepted for regular processing or is rejected for the specific reason(s) cited." Id. § 3084.5(b)(2) (Westlaw 2010).

Here, plaintiff has acknowledged that he received notification that the appeal in question was not being processed as an emergency appeal. Also, prison records submitted by plaintiff with his amended complaint show that plaintiff's appeal form was received for first level review on March 11, 2010, two days after plaintiff submitted his emergency appeal form. (Doc. No. 8 at 22.) The first level decision was returned to plaintiff on April 21, 2010, within the time requirements for first level responses. See Cal. Code Regs. tit. 15, §§ 3084.5(b)(2) and 3084.8(c)(1) ("First level responses shall be completed within 30 working days from date of receipt by the appeals coordinator."). As to plaintiff's argument that his appeal satisfied the applicable criteria to be considered on an emergency basis, "contrary to plaintiff's understanding, [under the applicable regulation] it is the appeals coordinator and not the inmate who determines whether an appeal is classified as an emergency or a non-emergency appeal." Donte v. Swingle, No. 2:10-cv-0299 KJM JFM (PC), 2011 WL 976613, at *5 (E.D. Cal. March 16, 2011).

It is clear from the face of plaintiff's amended complaint, sworn to by plaintiff as true and correct, and his exhibits thereto that plaintiff has failed to exhaust administrative remedies prior to filing this civil action. Plaintiff's original civil rights complaint was dated April 8, 2010, the day after plaintiff met with Dr. Ali for his first level administrative review. (Doc. No. 1 at 3.) After plaintiff received the decision at the first level of the prison grievance

process, he did not seek review at either the second level or Director's level of review. Therefore, the court will recommend that this action be dismissed without prejudice due to plaintiff's failure to exhaust his administrative remedies prior to filing suit. 42 U.S.C. § 1997e(a); Wyatt, 315 F.3d at 1120 ("A prisoner's concession to nonexhaustion is a valid ground for dismissal . . . ."); Irby v. Sinclair, No. CV-10-5053-LRS, 2010 WL 3860475, at *3 (E.D. Wash. Sept. 29, 2010) ( "[a]n affirmative defense, such as exhaustion, may be grounds for dismissal for failure to state a claim when it is clear from the face of the complaint that exhaustion has not been accomplished."); Woolridge v. California Dep't of Corrections, No. CV 08-02491 CTB, 2010 WL 2650188, at *2 (E.D. Cal. June 30, 2010) ("Although PLRA exhaustion is an affirmative defense, the Court may sua sponte dismiss the amended complaint if Woolridge's factual allegations, taken as true, establish nonexhaustion."); Williams v. Boardman, No. 1:10-cv-00038-AWI-SMS PC, 2010 WL 367794, at *1 (E.D. Cal. Jan. 27, 2010) (dismissal appropriate when it was clear from the face of plaintiff's complaint that he filed suit prior to exhausting).

II. Plaintiff's Motions

Plaintiff has filed three motions seeking preliminary injunctive relief. In each motion plaintiff requests the same relief, that is transfer to the state correctional facility located in either Vacaville or San Luis Obispo, a special bland diet, unspecified medical treatment, and a follow-up x-ray examination. In light of the recommendation set forth above that this action be dismissed, the motions for preliminary injunctive relief will be denied as premature.

On January 13, 2011, plaintiff filed a motion for the appointment of experts. Therein, plaintiff requests appointment of an "expert in Investigations, or a Paralegal/Legal secretary at the expense of the county to advise, an[d] assist the Petitioner on a confidential basis and to testify on the Petitioners [sic] behalf[.]" (Doc. No. 9 at 1.) Again, in light of the recommendation set forth above that this action be dismissed this motion will be denied.

/////

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to randomly assign this case to a District Judge;

2. Plaintiff's October 19, 2010 document styled, "Permission For Leave To File Plaintiff's Amendment Complaint" (Doc. No. 8), construed as plaintiff's Amended Complaint, is granted;

3. Plaintiff's motions for preliminary injunction, filed on January 24, 2011, February 17, 2011, and June 8, 2011 (Docs. No. 11, 12, and 14) are denied as premature; and

4. Plaintiff's January 13, 2011 motion for appointment of expert (Doc. No. 9) is denied.

Also, IT IS HEREBY RECOMMENDED that this action be dismissed without prejudice due to plaintiff's failure to exhaust administrative remedies prior to filing suit.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 29, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
mitc0926.fte